UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**JUNET CAIDOR**,

        Plaintiff,

v.                                     5:02-CV-1486
                                              (NAM/DEP)

**JOHN E. POTTER, POSTMASTER GENERAL,**

        Defendant.
_____

**APPEARANCES:**                        **OF COUNSEL:**

OFFICE OF STEWART L. WEISMAN       STEWART L. WEISMAN, ESQ.
8060 Shadow Rock, Box 598
Manlius, New York 13104-0598
*Attorney for Plaintiff*

GLENN T. SUDDABY                   WILLIAM F. LARKIN, ESQ.
UNITED STATES ATTORNEY           Assistant United States Attorney
FOR THE NORTHERN DISTRICT OF NEW YORK
100 South Clinton Street
Syracuse, New York 13261-7198
*Attorney for Defendant*

**NORMAN A. MORDUE, Chief U.S. District Judge**

## MEMORANDUM - DECISION AND ORDER

**I.    Introduction**

       Plaintiff, Junet Caidor, filed a complaint against defendant, John E. Potter, Postmaster General

of the United States Postal Service ("USPS") alleging employment discrimination based upon race,

color and sex/gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e *et seq.*  *See* Dkt. No. 1, Compl.  Plaintiff bases his Title VII claim on the USPS's alleged

discriminatory failure to hire him as a data conversion operator at one of its facilities.  Currently

pending before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure by which defendant seeks dismissal of plaintiff's complaint. *See* Dkt. No. 23, Notice of Mot. Defendant argues: (1) that plaintiff was not qualified for the position to which he applied; (2) that its non-selection of plaintiff does not support an inference of discrimination; and (3) that it had a legitimate, nondiscriminatory reason for not hiring plaintiff. *See generally* Dkt. No. 23, Mem. of Law. Plaintiff has filed his opposition to defendant's motion. *See* Dkt. Nos. 24-26. For the reasons that follow below, the Court GRANTS defendant's motion for summary judgment.

## II. Background

### A. *Plaintiff Applies for Employment*

Plaintiff is a black male and a citizen of the United States of America. *See* Dkt. No. 1, Compl. at ¶ 2. On April 12, 2001, plaintiff completed and submitted an application for a part-time data conversion operator position at the Remote Encoding Center ("REC") located at 7031 Manlius Center Road in East Syracuse, New York. *See* Dkt. No. 23, Statement of Material Facts at ¶ 1; Dkt. No. 1, Compl. at ¶ 3. The application asked the following question:

> Have you ever been convicted of a crime or are you now under charges for any offense against the law? You may omit: (1) any charges that were dismissed or resulted in acquittal; (2) any conviction that has been set aside, vacated, annulled, expunged or sealed; (3) any offense that was finally adjudicated in the juvenile court or juvenile delinquency proceedings; and (4) any charges that resulted in only a conviction in a non-criminal offense. **All felony and misdemeanor convictions and all convictions in state and federal courts are criminal convictions and must be disclosed. Disclosure of such convictions are required even if you did not spend any time in jail and/or were not required to pay a fine.**

*See* Dkt. No. 23, Statement of Material Facts at ¶ 2; Ex. M. In response, plaintiff checked "No," wrote his initials next to the corresponding checkmark, and signed and dated the application April 12, 2001. *See* Dkt. No.23, Statement of Material Facts at ¶ 3, Ex. 3.

2

At the time plaintiff filed his application, Patricia DiMento was the Human Resource Manager at the REC. *See* Dkt. No. 23, Statement of Material Facts at ¶ 4. The REC administered written and typing tests to data conversion operator applicants and added the names of those applicants who passed both the written and typing tests to a hiring register. *See id.* at ¶ 5. Approximately three to four times a year, the REC would need people to fill data conversion operator positions, and DiMento contacted applicants on the hiring register for interviews to fill these openings. *See id.* at ¶ 6. DiMento contacted plaintiff for an interview, and Wendy Morris, an employee of the REC, interviewed plaintiff and selected him for employment. Plaintiff passed a medical assessment and passed civil service, drug and data entry tests. *See* Dkt. No. 23, Statement of Material Facts at ¶ 11; Dkt. No. 1, Compl. at ¶ 6.

If the REC selected an applicant for employment after the interview, it would conduct a background check whereby it contacted the law enforcement agencies of record in the areas the applicant listed under residence for the last ten years and requested any information relating to the applicant. *See* Dkt. No. 23, Statement of Material Facts at ¶ 10. In accordance with this procedure, on April 25, 2001, DiMento sent a criminal background inquiry to the Criminal Records Division of the New York State Office of Court Administration ("NYSOCA"). On May 25, 2001, DiMento received a criminal disposition information form from the NYSOCA,[1] which indicated that on January 23, 1990, plaintiff had been arrested and charged with: assault in the second degree, a class D felony, in violation of N.Y. PENAL LAW § 120.05; resisting arrest, a class A misdemeanor, in violation of N.Y. PENAL LAW § 205.30; and assault in the third degree, a class A misdemeanor, in violation of N.Y. PENAL LAW § 120.00. *See* Dkt. No. 23, Statement of Material Facts at ¶¶ 12-13,

---

[1] The REC's failure to send a filing fee with its inquiry delayed its receipt of plaintiff's criminal disposition information form. *See* Dkt. No. 23, Statement of Material Facts at ¶ 14.

15, Ex. Q; Dkt. No. 24, Mem. of Law at 5. The criminal disposition information form further indicates that plaintiff pled guilty to one of the misdemeanor charges and received a three-year term of probation.[2] *See id.*, Ex. Q. The same day, DiMento sent plaintiff a certified letter detailing the criminal charges of a person with a name identical to his as disclosed by the criminal disposition information form. In the letter, DiMento provided plaintiff with an opportunity to submit any documentation regarding the contents of the criminal disposition information form. DiMento advised plaintiff that he must submit a written explanation and any documentation regarding the discrepancy, *i.e.*, the apparent false statement he provided on his application, as soon as possible and that he should contact her by telephone prior to May 31, 2001. *See* Dkt. No. 23, Statement of Material Facts at ¶ 16. Plaintiff received this letter the next day, Saturday, May 26, 2001. *See id.* at ¶ 17; Dkt. No. 25, Statement of Material Facts at ¶ 15. On the next business day, Tuesday May 29, 2001, plaintiff telephoned DiMento, who advised him that until she was in possession of written documentation "indicat[ing] that the[ ] charges were sealed, expunged, or [dismissed]," he could proceed no further in the hiring process. Dkt. No. 23, Ex. N, at 49. DiMento also advised that she could not accept a verbal explanation. DiMento further advised him that if he could provide the documentation to her by May 31, 2001, then he would be hired. She also indicated that she would consider documentation at anytime thereafter. *See* Dkt. No. 23, Statement of Material Facts at ¶¶ 17, 29.

On June 20, 2001,[3] DiMento sent a letter by certified mail to plaintiff, which referenced their

---

[2] In her deposition testimony, DiMento explains that she was unsure based on the criminal disposition information form whether plaintiff had been merely charged or charged *and* convicted of the offenses listed by the criminal disposition information form. *See* Dkt. No. 23, Ex. N at 55-56. In accordance with USPS regulations, DiMento extended plaintiff the opportunity to submit documentation regarding the criminal disposition information form to clarify the apparent discrepancy. In any event, the parties agree that plaintiff entered a guilty plea to a misdemeanor for which he received a three-year term of probation. *See* Dkt. No. 23, Mem. of Law at 17; Dkt. No. 24, Mem. of Law at 5.

[3] As described below, by this time, plaintiff had already requested Equal Employment Opportunity Commission ("EEOC") counseling.

4

recent telephone conversation and noted that she had previously given him an extension of time to submit documentation refuting the criminal disposition information form. In her letter, DiMento also notified plaintiff that because she had not received any documentation from him with respect to the criminal information disposition form, she had removed his name from the hiring register. *See* Dkt. No. 23, Statement of Material Facts at ¶¶ 18-19. Plaintiff did not submit any documentation regarding the contents of the criminal disposition information form at any time prior to the USPS's closure of the REC in July 2002.[4] *See id.* at ¶ 30.

### B.   *Other Applicants*

In addition to plaintiff, the REC selected thirty other applicants for a tentative hiring date of May 31, 2001, pending a successful pre-screening. DiMento notified these applicants in the same manner as she did plaintiff. In this pool of applicants from which the REC selected plaintiff, three other applicants failed to list convictions on their applications for employment, and again, DiMento notified these applicants in the same manner as she did plaintiff. DiMento removed these applicants from the hiring register for falsifying their applications for employment. *See* Dkt. No. 23, Statement of Material Facts at ¶¶ 31-33.

### C.   *Plaintiff's Proceedings Before the Equal Employment Opportunity Commission*

On June 1, 2001, three days after plaintiff's May 29, 2001, telephone conversation with DiMento, plaintiff requested an appointment with a dispute resolution specialist with respect to allegations of racial and gender discrimination in his non-selection for employment as a data conversion operation at the REC. On June 12, 2001, plaintiff signed a Pre-Complaint Counseling Form, in which he formally alleged that the USPS denied him a position as a data conversion operator

---

[4] According to DiMento, advances in technology rendered encoding jobs obsolete and the USPS closed remote encoding centers nationwide. *See* Dkt. No. 23, Ex. N. at 6-7.

5

at the REC because of his race. Plaintiff alleged that DiMento "made up a False Felony Criminal Record as a pretext, subterfuge to keep [qualified] Black males" from working at the REC. *See* Dkt. No. 23, Mem. of Law at 2, Ex. A. Plaintiff further alleged that DiMento knew that he did not have a felony criminal record. *See id.*

On July 16, 2001, plaintiff signed an EEOC Complaint alleging that on May 25, 2001, the REC denied him a position as a data conversion operator solely on the basis of his race, color and gender. *See id.*, Ex. B. By letter dated July 27, 2001, the USPS informed plaintiff that it had received his complaint and filed it effective July 18, 2001. The letter explained that the USPS had accepted his complaint and would conduct an investigation as follows: "[t]he complainant claims discrimination based on his race, color and sex, when on May 25, 2001, he became an unsuccessful applicant for employment at the [REC]." *See* Dkt. No. 23, Mem. of Law at 2, Ex. C. The letter specified that if plaintiff disagreed with the defined claim, he must provide his objections in writing within seven calendar days from the date of his receipt of the letter. *See id.*, Ex C. Plaintiff did not submit a letter objecting to the claim as defined in the letter. *See id.* at 3. On October 5, 2001, plaintiff signed, under penalty of perjury, an EEOC Investigative Affidavit in which he declared that the USPS denied him employment solely because of his race, color, and sex. He further declared that he did not have a criminal record. *See* Dkt. No. 23, Mem. of Law at 3, Ex. D. On November 26, 2001, plaintiff requested the appointment of an Administrative Judge. *See id.*, Ex. E. On August 9, 2002, the USPS filed a motion for decision without a hearing while plaintiff filed a request for a hearing. *See id.*, Ex. F. By decision dated September 4, 2002, Administrative Judge Ricardo Cuevas rendered a decision without a hearing in which he concluded that plaintiff failed to prove that the USPS discriminated against him on the basis of his race, color and/or gender when on May 25, 2001,

6

it disqualified him from employment. *See id.*, Ex. G. On September 4, 2002, Administrative Judge Cuevas entered judgment in favor of the USPS. *See id.*, Ex. H. The following day, on September 5, 2002, plaintiff wrote to Kenneth W. Chu, Chief Administrative Judge, alleging that Administrative Judge Cuevas and counsel for the USPS had conspired to violate his civil rights. *See id.*, Ex. I. On October, 3, 2002, plaintiff appealed Administrative Judge Cuevas' decision to the EEOC again alleging that Administrative Judge Cuevas and counsel for the USPS had conspired to violate his civil rights and prevent discovery and a hearing. *See* Dkt. No. 23, Ex. J. On March 26, 2003, the EEOC dismissed plaintiff's appeal due to plaintiff having commenced the instant action in the Northern District. *See id.*, Ex. K.

During the pendency of plaintiff's EEOC Complaint, the USPS conducted an investigation, which focused on its hiring practices at the REC. The USPS's investigation revealed that for the period of August 1997 to May 2001, a total of ten applicants failed to report past convictions on their applications for employment; the USPS did not hire any of these applicants. Of these ten similarly situated applicants, four were white males, five were white females and one was a black female. Six of the ten similarly situated applicants failed to submit written documentation regarding their convictions; of these six applicants, three were white males, two were white females and one was a black female. Of the four who submitted written documentation, three were white females and one was a white male. *See* Dkt. No. 23, Statement of Material Facts at ¶¶ 34-35 and Ex. U.

>   D.   *USPS Handbook–Personnel Operations*

The USPS Handbook sets forth various regulations with respect to employment applications. Section 311.1 of the Handbook obligates the USPS "to maintain the security of the mail and to assure public trust and confidence in the reliability and integrity of its employees." *See* Dkt. No. 23,

7

Statement of Material Facts at ¶ 20, Ex. S.  Section 311.21 provides that the appointing office "must review the applications very carefully, particularly with regard to omissions, false statements, periods unaccounted-for, and poor employment records.  Each application must bear the eligible's signature and must contain satisfactory answers to . . . [c]onvictions, forfeitures of collateral, or pending charges."  *See id.* at ¶ 21, Ex. S.  Section 311.64 provides that for all applicants selected for postal employment, the USPS must obtain police records "from city, town, county and State authorities where applicants have resided within the last 5 years."  *See* Dkt. No. 23, Statement of Material Facts at ¶ 22, Ex. S.  Section 313.343 provides that "[t]he mere fact that an applicant has a criminal conviction record is not sufficient to disqualify that applicant from postal employment.  Instead, an applicant should be rejected on the basis of a history of criminal conviction only after a specific finding that the history is directly related to the applicant's present capacity to perform as a [USPS] employee."  *See id.*, Ex. S.  Section 313.344 provides that where an applicant's conviction occurred more than ten years prior to application, the conviction "may not serve as the sole basis for disqualification from appointment."  *See id.* at ¶ 23, Ex. S.  Section 313.37 provides that where discrepancies exist between the criminal record information received from law enforcement authorities and the information supplied by the applicant, "the appointing officer must send to the applicant a letter of inquiry . . . ."  *See id.* at ¶ 24, Ex. S.  Section 315.11 provides that before the USPS may eliminate an applicant from a hiring register on the basis of information other than that contained in the application, the USPS must give the applicant an opportunity, by letter of inquiry, to comment on the unfavorable information.  *See* Dkt. No. 23, Statement of Material Facts at ¶ 25, Ex. S.  Section 315.11 further provides that the letter of inquiry must state the facts with sufficient specificity to enable the applicant to understand the details of the question concerning suitability for

8

employment. *See id.*, Ex. S. Section 315.12 provides that the letter of inquiry "must also state that, if there is no reply within 10 days, the eligible's name will be removed from the register for failure to reply to official correspondence." *See id.* at ¶¶ 26-27, Ex. S. Similarly, section 315.23 provides that "[i]f there is no response from the eligible to a letter of inquiry or other official correspondence," the USPS is to remove the eligible's name from the hiring register. *See id.*, Ex. S. Section 313.2(c) provides that the USPS may disqualify an applicant for "[i]ntentionally false statements, deception or fraud in application, examination or information furnished incident to appointment by the [USPS]." *See id.* at ¶ 28, Ex. S; Dkt. No. 25, Statement of Material Facts at ¶ 28.

**III. Discussion**

*A. Summary Judgment Standard*

The standard for summary judgment is familiar and well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (quoting FED. R. CIV. P. 1). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). To defeat a

motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.  When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper.  *See Anderson*, 477 U.S. at 250-251.

   *B.     Defendant's Motion Complies with Rule 56 and Local Rule 7.1(a)*

As a preliminary matter, the Court must address plaintiff's procedural challenge to the USPS's motion for summary judgment.  Plaintiff contends that the USPS failed to furnish an affidavit from a person with personal knowledge as part of its motion in violation of Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 7.1(a).  Plaintiff claims that the declaration of USPS's counsel is "not appropriate to introduce the exhibits . . . referenced in the USPS Memorandum of Law . . . [because] no factual averments are made in the Declaration nor are there any references made to exhibits under oath or under the penalty of perjury."  Dkt. No. 24, Mem. of Law at 2.  Plaintiff also appears to suggest that in the absence of an affidavit, it would be improper for the Court to consider the USPS's Statement of Material Facts.  *See id.* at 3.

Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  FED. R. CIV. P. 56(e).  Local Rule 7.1(a) provides, in part, that "all motions and opposition to motions require a memorandum of law, supporting affidavit, and proof of service on all the parties."  Local Rule 7.1(a)(2) specifies that "[a]n affidavit must not contain legal

10

arguments but must contain factual and procedural background as appropriate for the motion being made." "In accordance with 28 U.S.C. § 1746 (1988),[5] however,] unsworn declarations, subscribed by the declarant as true under penalty of perjury, may be substituted for affidavits." *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 n.1 (2d Cir. 1994). Here, counsel for the USPS filed a declaration pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

> I am familiar with the facts in this case . . . This declaration is filed to comply with Rule 7.1 of the local Rules of the United States District Court for the Northern District of New York. Filed simultaneously in support of this Motion For Summary Judgment is a Memorandum of Law. For the reasons stated in the Memorandum of Law, I believe the position by the defendant has merit. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dkt. No. 23, Larkin Decl. at ¶¶ 1-4. Although the challenged declaration is unsworn, it is dated by month and year and ends with an affirmation nearly identical to that suggested by Section 1746. Counsel for the USPS "substantially compl[ied] with the[ ] statutory requirements, which is all that [Section 1746] requires." *Leboeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir.1999). Furthermore, although Local Rule 7.1 specifies that a party moving for summary judgment must file an affidavit in support thereof, the Court declines to interpret the rule as one being so rigid in its application as to preclude giving effect to a declaration filed in accordance with 28

---

[5]Section 1746 provides:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date) (Signature)."

28 U.S.C. § 1746.

U.S.C. § 1746.

  *C.*  *Plaintiff's Title VII Claim*

  Plaintiff claims that defendant chose not to hire him on the basis of his race, color and gender. Under Title VII, it is unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's race, color . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). In analyzing a plaintiff's claim of failure to hire based on race and/or sex, the Court uses the three-part burden shifting analysis articulated by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973). First, a plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of discriminatory failure to hire, Title VII requires plaintiff to show: "(1) that he is a member of a protected class, (2) that he applied for and was qualified for a job for which the employer was seeking applicants, (3) that despite these qualifications, the employer rejected him and (4) that, after this rejection, the job remained open and the employer continued to seek applicants having his qualifications." *Fisher v. Vassar College*, 70 F.3d 1420, 1433 (2d Cir. 1995) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802); *see also Cruz v. Coach Stores,* Inc., 202 F.3d 560, 565 (2d Cir. 2000); *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996) (quoting *McDonnell Douglas*, 411 U.S. at 802; *Lediju v. New York City Dep't of Sanitation*, 173 F.R.D. 105, 113 (S.D.N.Y. 1997) (collecting cases). Second, if the plaintiff establishes a *prima facie* case, then a rebuttable presumption of discrimination arises that shifts the burden of production to the defendant to "articulate a legitimate, clear, specific and nondiscriminatory reason" for its employment decision. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995). "The employer need not *persuade* the court that it was motivated by the reason that it provides; rather, it must simply articulate an

explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). Third, if the defendant articulates such a rationale, "the presumption of discrimination drops out," *Roge v. NYP Holdings, Inc.*, 257 F.3d 164,168 (2d Cir. 2001), and the plaintiff must be afforded "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000). The Supreme Court has cautioned, however, that "[i]t is not enough . . . to *dis* believe the [would-be] employer; the factfinder must [also] *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis in original).

There is no question that plaintiff, as a black male, is a member of a protected class, nor is there any question that defendant did not hire plaintiff for the position to which he applied. Thus, the Court focuses on whether plaintiff was qualified for the position to which he applied and whether his rejection occurred under circumstances giving rise to an inference of discrimination.

        1.    *Prima Facie* Case

            a.    Plaintiff's Qualifications

To demonstrate that plaintiff was qualified for the position for which he applied, he need not demonstrate that his potential performance would be "flawless or superior" but rather that he "possesses the basic skills necessary for performance of [the] job." *De La Cruz v. New York City Human Resources Admin. Dep't of Social Serv.*, 82 F.3d 16, 20 (2d Cir. 1996) (citing *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978)). Nonetheless, the Second Circuit has held that

13

"being 'qualified' refers to the criteria the employer has specified for the position." *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). Plaintiff asserts that he holds a Bachelor of Arts Degree in economics from York College and an Associates Degree in business administration from Queensborough Community College and, *inter alia*, had approximately eight years of experience in customer service-related positions. *See* Dkt. No. 24, Mem. of Law at 5, Ex. 8. These academic credentials and work experience notwithstanding, plaintiff has failed to demonstrate that he was qualified for the position.

As noted above, the USPS must maintain the security of the mail and assure the public's trust and confidence in the reliability and integrity of its employees. Accordingly, the USPS must review employment applications very carefully, particularly with regard to omissions, false statements, periods unaccounted-for, and poor employment records. Each application must bear the eligible's signature and must contain satisfactory answers to convictions, forfeitures of collateral, or pending charges. Furthermore, prior to officially extending an offer of employment to an applicant, the USPS must obtain police records from city, town, county and State authorities where applicants have resided within the last 5 years.

Here, in response to question 7a on the application, which asked whether the applicant had ever been convicted of a crime, plaintiff checked "No," wrote his initials next to the checkmark, and signed the application. The USPS subsequently performed a background check of plaintiff, and the NYSOCA provided the USPS with a criminal disposition information form which indicated that plaintiff had one felony and two misdemeanor charges and that plaintiff pled guilty to one of the misdemeanor charges. Under USPS policy, the conviction did not automatically disqualify plaintiff from employment, and, adhering to its policy, the USPS afforded plaintiff the opportunity, by letter

of inquiry, to provide written documentation to explain the discrepancy in his application and criminal disposition information form. Plaintiff never submitted any such documentation. The USPS's rationale for removing plaintiff from the hiring list is twofold: (1) plaintiff failed to submit written documentation explaining the discrepancy between his application and charges and the conviction noted by the criminal disposition information form, and (2) in the absence of any written documentation to the contrary, the USPS concluded that plaintiff had submitted false information on his employment application. *See* Dkt. No. 23, Mem. of Law at 14. By providing false information on his employment application, plaintiff demonstrated that he was not qualified for the position. *See Jowers v. Lakeside Family and Children's Servs.*, 2005 WL 3134019, at *8 (S.D.N.Y. Nov. 22, 2005) ("The disclosure of the Plaintiff's concealed criminal history, in contradiction to the information he provided on his employment application, is a sufficient race-neutral and legitimate reason to terminate the Plaintiff, thus refuting any *prima facie* case the Plaintiff may have established under the first phase of the *McDonnell Douglas* burden shifting analysis."); *Kravit v. Delta Air Lines, Inc.*, 1992 WL 390236, at *2 (E.D.N.Y. Dec. 4, 1992) ("It is well settled that a misstatement of a material fact on an employment application is a sufficient non-discriminatory ground for an employer's refusal to hire.").

Plaintiff, however, contends that prior to his receipt of DiMento's May 25, 2001, letter, he was unaware of his conviction, and that his failure to acknowledge his criminal record was unintentional. Plaintiff argues that a genuine issue of material fact exists with respect to whether his application was intentionally false, deceptive or fraudulent. *See* Dkt. No. 24, Mem. of Law at 5-6. Assuming *arguendo* that plaintiff's state-of-mind were beyond reproach in this regard so as to excuse the false statement that he submitted as an unintentional mistake, there remains the fact that plaintiff

15

did not even attempt to respond in writing the USPS's letter of inquiry. As noted above, the USPS's policy, § 315.23, clearly states that an applicant's failure to respond in writing to a letter of inquiry is cause for the applicant's removal from the hiring list. Plaintiff's subjective belief that he did not misrepresent his criminal record is insufficient to overcome the fact that he never provided written documentation explaining the discrepancy between his application and his criminal disposition information form. *Cf. Gurry v. Merck & Co., Inc.*, 2003 WL 1878414, at *7, n.9 (S.D.N.Y. Apr. 14, 2003). Thus, plaintiff has not demonstrated that he was qualified for the position and has failed to establish a *prima facie* case of racial or gender discrimination under Title VII. Accordingly, summary judgment is appropriate.

      b.  No Rational Inference of Discrimination

Assuming *arguendo* that plaintiff demonstrated that he was qualified for the position, the Court finds that the evidence does not support a rational inference of discrimination. In his memorandum of law, plaintiff attempts to introduce statistical evidence under the guise of a previously unstated disparate impact claim to show that his non-hiring gives rise to an inference of discrimination. Plaintiff, however, cannot assert this new claim at the summary judgment stage[6]; moreover, plaintiff has not retained an expert witness in support of the introduction of his statistics, and the statistics do not compare plaintiff against a pool of qualified applicants.

Plaintiff has failed to establish that the USPS treated similarly situated applicants–*i.e.*, applicants who failed to report past convictions on their application for employment at the REC, and who also failed to produce written documentation explaining the discrepancy between their

---

[6]As noted above, plaintiff did not object to the USPS's EEOC letter which defined his discrimination claims as being based on his race, color and sex, when on May 25, 2001, he became an unsuccessful applicant for employment at the REC. Plaintiff did not allege a disparate impact case in his EEOC Complaint.

applications and criminal disposition information forms–outside of his racial group and/or gender any differently than it treated him.

As noted above, during plaintiff's EEOC proceedings, the USPS conducted an investigation of its hiring practices at the REC, which revealed that for the period of August 1997 to May 2001, a total of ten applicants failed to report past convictions on their applications for employment. Of these ten similarly situated applicants, four were white males, five were white females and one was a black female. Six of the ten similarly situated applicants failed to submit written documentation regarding their convictions; of these six applicants, three were white males, two were white females and one was a black female. Of the four who submitted written documentation, three were white females and one was a white male. Most importantly, the USPS did not hire any of these similarly situated applicants.

2.      Legitimate, Nondiscriminatory Reason For Non-Selection

Even if plaintiff had established a *prima facie* case of employment discrimination based upon race, his claim would still fail because defendant has offered ample evidence of its legitimate, nondiscriminatory reasons for not hiring him. As noted above with respect to plaintiff's qualifications, the USPS has demonstrated that its handbook sets forth regulations governing its hiring practices. In accordance with these regulations, the USPS removed plaintiff from its hiring list because he failed to provide written documentation to explain the apparent discrepancy between his application and criminal disposition information form. The USPS reasonably concluded that plaintiff had submitted a false statement on his application, which constitutes a legitimate, non-discriminatory reason for failing to hire an applicant. *See Rizzo v. Sheahan*, 263 F.3d 705, 715 (7th Cir. 2001) (finding defendant provided legitimate, non-discriminatory reasons for termination where

17

plaintiff made misrepresentations on her employment applications); *Woodell v. United Way of Dutchess County*, 357 F.Supp.2d 761, 772 (S.D.N.Y. 2005) (noting that knowing misrepresentations during employment application process constitute legitimate, non-discriminatory reason for plaintiff's termination); *Ahmad v. Nassau Health Care Corp.*, 234 F.Supp.2d 185, 196 (S.D.N.Y. 2002) (explaining that material misrepresentations on an employment application is a legitimate non-discriminatory reason for termination), *aff'd*, 71 Fed.Appx. 98 (2d Cir. 2003).  The burden would now shift to plaintiff who must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

        3.      Lack of Pretext

Plaintiff disputes that defendant failed to hire him for legitimate, non-discriminatory reasons and asserts that the stated rationale is but a pretext to bar the employment of a qualified black man. *See* Dkt. No. 24, Mem. of Law at 9.  To show pretext, a plaintiff must demonstrate "circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997).  Based upon a preponderance of the evidence, the Court finds that plaintiff has failed to meet his burden.  There is nothing on the record to support a finding that defendant subjected plaintiff to a standard different from that applied to similarly situated white applicants.  Indeed, the record supports the opposite finding: the USPS did not hire any of the nine white applicants who falsely indicated on their application for employment that they did not have a prior criminal conviction.  The Court finds that the evidence, viewed in its entirety, does not support a rational inference of discrimination.

**IV. Conclusion**

WHEREFORE, after careful consideration of the parties' submissions and the applicable law, it is hereby

ORDERED, that defendants' motion for summary judgment, (Dkt. No. 23), pursuant to Rule 56 of the Federal Rules of Civil Procedure is GRANTED and plaintiff's complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

Dated: September 26, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge